```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Thomas G. Johnson,                :

      Plaintiff,              :

  v.                               :   Case No. 2:16-cv-172

                                         :   CHIEF JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social               Magistrate Judge Kemp
Security,                         :

      Defendant.              :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Thomas G. Johnson, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on December 3, 2012, and alleged that Plaintiff became disabled on March 20, 2012.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on January 20, 2015. In a decision dated February 25, 2015, the ALJ denied benefits. That became the Commissioner's final decision on December 30, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on May 2, 2016. Plaintiff filed a statement of specific errors on June 16, 2016, to which the Commissioner responded on August 24, 2016. Plaintiff filed a reply brief on September 7, 2016, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 54 years old as of the date of the hearing and who has a high school education, testified as

follows.  His testimony appears at pages 76-85 of the administrative record.

Plaintiff first testified that he had not worked since March 20, 2012.  He was a truck driver for ProLogix, making deliveries to stores.  He had done that job for 33 years.  It required him to lift up to 75 pounds.  He said that he was unable to work due to leg pain, which radiated into his feet, and that he also had some lower back pain.  He was using a cane at the time of the hearing, having had surgery.

On a typical day, Plaintiff testified that he spent most of his time lying down.  He did not use stairs since his room was on the first floor.  He would watch television and read, although he had some difficulty concentrating on what he was reading. Plaintiff said he did not need assistance bathing or dressing, and he was able to drive, although he could not sit for more than 45 minutes before needing to get out and walk around.  He often napped during the day because he did not sleep well at night. Plaintiff did accompany his wife grocery shopping and could walk around the store for fifteen or twenty minutes before having to sit down.

The surgery which Plaintiff had was on his right leg. Immediately after that surgery, while he was still in the hospital, he developed pain in his left leg.  He believed that he was worse after the surgery than before it.

### III.  The Medical Records

The pertinent medical records are found beginning at page 231 of the record.  They can be summarized as follows.

On September 23, 2011, Plaintiff was seen in the emergency room after having injured his back at work.  His lower back was tender along the spine and the paraspinal areas.  He was diagnosed with neuritis and follow-up with a specialist was recommended.  (Tr. 231-38).  A subsequent EMG study showed mild

right S1 irritation. (Tr. 241-42).

On April 3, 2012, Plaintiff was seen for a follow-up of left knee surgery that was done in 2008. At that time, he was still working. He had no pain in his knee but did need to hold a handrail when using stairs. He did have some osteoarthritis in that knee. (Tr. 243-44).

On August 24, 2012, Plaintiff had an MRI done of his lumbar spine. It showed multilevel degenerative disc disease most prominent at L5-S1 and nerve root impingement at that level. (Tr. 247-48). Prior to that time, he had been seen by Dr. Chen, a neurological spine surgeon, who commented that Plaintiff had developed right-sided radiculopathy, probably from a displaced disc at the L4-L5 level and other changes in the low back. Findings included an abnormal gait and decreased muscle strength and range of motion. On September 25, 2012, Dr. Chen saw Plaintiff again, and noted that he was in significant pain which was exacerbated by changing positions and twisting. Dr. Chen proposed injections to pinpoint the source of pain and said that surgery was a possibility. (Tr. 254-58). Dr. Holt, who had referred Plaintiff to Dr. Chen, made several reports on Plaintiff's condition in 2012, noting Plaintiff's symptoms of low back and right leg pain, and recommended that he "avoid moderate activity according to symptoms and should avoid aggravating activity." See, e.g., (Tr. 266). Similar recommendations were made by Dr. Holt in 2013 and early 2014, and he did not release Plaintiff to go back to work.

In January, 2013, Plaintiff was evaluated by Dr. Hoover for workers' compensation purposes. Plaintiff said that his pain was worse with prolonged activity but helped by medication, switching positions, or using heat and ice. Dr. Hoover recommended a reconditioning program if injections were successful in treating Plaintiff's pain. He imposed a temporary lifting restriction of

-3-

no more than ten pounds occasionally. (Tr. 308-11).

Dr. Yu saw Plaintiff in 2013 and noted that epidural injections had been done by Dr. Henry, who was also managing Plaintiff's pain with medications, including oxycodone. She reviewed those results and Dr. Chen's records and recommended a discogram since injections did not appear to have helped. (Tr. 313-14). After some additional studies were done, Dr. Chen saw Plaintiff on February 4, 2014, and recommended surgery since Plaintiff was "quite disabled from his current situation with continuing chronic pain symptoms rated at a 6/10 to 8/10 ...." (Tr. 367-69). Plaintiff had surgery on July 28, 2014. When he was seen by Dr. Holt for a follow-up appointment, he reported pain in his low back and left buttock radiating down to his foot. Straight leg raising on the left was positive. (Tr. 403-05). He reported the same symptoms to Dr. Henry and was continued on his pain medications. He also reported to his surgeon that the right leg pain had resolved but he had left leg pain aggravated by walking and driving and alleviated by lying down. A new CT scan was recommended. (Tr. 426-27). That was done in February, 2015, and showed some lateralization of the surgical screws at L5 and S1 which could be causing pain. A recommendation was made for further surgery to remove that hardware. (Tr. 440-41). As of the time of the ALJ's decision, that had not occurred.

There are also state agency reviewers' opinions in the record, although they both date from 2013. In March, 2013, Dr. Manos concluded that Plaintiff could work at the light exertional level with some restrictions based on his earlier knee replacement and his low back injury. (Tr. 96-98). In May, 2013, Dr. McKee reached the same conclusion. (Tr. 107-09).

### IV. The Vocational Testimony

Dr. Mona Robinson was called to testify as a vocational expert at the administrative hearing. Her testimony begins at

page 86 of the administrative record.

First, Dr. Robinson testified about Plaintiff's past work. She said he did only one job, delivery driver, and that it was a semi-skilled job typically listed as at the medium exertional level, although Plaintiff performed it at the heavy level.

Dr. Robinson was then asked some questions about someone with Plaintiff's background and who could work at the light exertional level. However, the person could only balance frequently and only climb ramps and stairs, stoop, kneel, crouch, and crawl occasionally. He or she could not climb ladders, ropes, or scaffolds. In response, Dr. Robinson said that such a person could not do Plaintiff's past work but could work as a mail sorter, garment sorter, or marker, all of which were light, unskilled positions. If the same person were limited to lifting no more than ten pounds occasionally, could frequently push, pull, sit, and lift above shoulder level, and could occasionally bend, twist, turn, reach below knee level, squat, kneel, stand, and walk, Plaintiff's past work would still be eliminated, as would any other jobs. The same would be true of someone who could not complete an eight-hour work day or 40-hour work week due to pain.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 54-65 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine and

obesity.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to work at the light exertional level but he could only balance frequently and only climb ramps and stairs, stoop, kneel, crouch, and crawl occasionally.  He could not climb ladders, ropes, or scaffolds.  With these restrictions, the ALJ concluded that Plaintiff could not do his past relevant work, but he could perform the jobs identified by the vocational expert, including mail sorter, garment sorter, or marker.  The ALJ further determined that these jobs existed in significant numbers in the State and in the national economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and (2), alternatively, the Court should remand the case for consideration of new and material evidence under 42 U.S.C. §405(g), sentence six.  The first of these issues will be evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

  A. Residual Functional Capacity Finding

 Plaintiff's first claim is that the ALJ erred in his residual functional capacity finding. He divides this argument into two parts: first, that the ALJ's finding is inconsistent with the totality of the medical record, and, second, that the ALJ improperly relied on outdated medical opinions. The Court will similarly divide its analysis of the issue.

  1. The Totality of the Record

 The Court has summarized the medical records above. Plaintiff makes a number of claims about why the ALJ did not properly weigh or construe that evidence. The Court will begin by reviewing the ALJ's articulated basis for his decision.

 The ALJ cited to medical reports indicating that in 2013 Plaintiff had a normal gait, steady station, intact sensation, and normal motor function, and that he reported a tolerable pain level with medication. (Tr. 59). Moving to 2014, the ALJ said

that examinations also showed no gait abnormality and grossly normal motor function.  Id.  Commenting on the July, 2014 surgery, the ALJ said that although Plaintiff used a back brace and cane after surgery, his right leg issues had resolved.  The ALJ did acknowledge that Plaintiff was then reporting left leg pain and numbness, but he still said that his pain level with medication was 3/10.  Id., citing to Exhibits 32F and 33F.  The ALJ appeared to characterize the October, November, and December 2014 examinations as normal.  (Tr. 59-60).  Based on that review of the evidence, the ALJ found that Plaintiff had the residual functional capacity described by the state agency reviewers, whose opinions were given great weight as being "consistent with the medical record in its entirety" and as not being altered by any evidence submitted after those opinions were rendered.  (Tr. 60).

    As to other opinions, the ALJ gave some weight to a one-time examination done for workers' compensation purposes by Dr. Lakatos, and less weight to the one done by Dr. Hoover.  He also gave little weight to the opinions of Dr. Holt that Plaintiff should avoid moderate activity, noting that they did not rate Plaintiff's functional capacity in any specific way and were inconsistent with the objective medical findings.  He similarly discounted other opinions by Dr. Holt, some of which were expressed while Plaintiff was still employed.  Lastly, the ALJ found that Plaintiff was not entirely credible and that his daily activities were not inconsistent with the performance of light work.  (Tr. 62).

    In his statement of errors, Plaintiff points to other evidence in the record which the ALJ did not recite in his decision, such as several reports from Dr. Henry and others where Plaintiff said his pain was more severe (6/10 or 7/10), and objective evidence like a CT scan or discogram showing problems

in the lumbar spine. Since these records contained objective support for Plaintiff's claim of disabling pain (or at least a level of pain inconsistent with light work), Plaintiff argues that the ALJ's failure to discuss them requires a remand. He does not specifically assert any violation of the "treating physician" rule found in 20 C.F.R. §404.1527(c) (and there is no clear statement from any of the treating sources that Plaintiff could not do light work), so the Court will not conduct an analysis of that particular issue in the context of its review of this claim of error.

Even under the substantial evidence standard of review, which gives an ALJ a significant amount of latitude to evaluate the evidence, and ALJ may not read the record so selectively that his decision lacks substantial support. As the courts have said, "'cherry picking' or disregarding favorable statements that, as a whole, demonstrate [disability] amounts to a distortion of the record." Bradshaw v. Comm'r of Social Security, 2013 WL 3762940, *10 (E.D. Mich. July 17, 2013). This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes. See, e.g., Landenberger v. Comm'r of Social Security, 2012 WL 6114740 (S.D. Ohio Dec. 10, 2012), adopted and affirmed 2013 WL 143374 (S.D.Ohio Jan. 11, 2013), citing, *inter alia*, Schultz v. Comm'r of Social Security, 2012 WL 553565, *7 (E.D. Mich. Jan. 31, 2012), adopted and affirmed 2012 WL 553944 (E.D. Mich. Feb. 21, 2012). On the other hand, as the Court of Appeals has repeatedly said, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." See Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001).

It is certainly true that the ALJ did not summarize every medical record which was before him. Some of them do show reported symptoms in excess of those he primarily relied on,

-9-

although the ones which Plaintiff relies on in his statement of errors are primarily his own subjective descriptions of his pain. Nevertheless, the ALJ's review of the evidence is largely limited to the symptoms caused by Plaintiff's back condition prior to his July, 2014 surgery.  While he may have been within his discretion to construe those records as consistent with an ability to do light work - which includes standing and walking for up to six hours in a work day - it is not nearly as clear that the ALJ properly took into account the problems which Plaintiff experienced with his left leg immediately after his surgery.

As Plaintiff testified, and as the records confirm, Plaintiff began to describe pain, tingling, and numbness in his left leg almost immediately after his surgery.  He described it in September, 2014 as being a 7/10 in intensity, and as being worse with any activity.  He was still taking Lyrica and oxycodone even though his right leg symptoms had resolved, and straight leg raising was now positive on the left side, a finding not present in the records previously.  He was using a cane at his doctors' appointments (something else noted in the records but not acknowledged by the ALJ).  He also said that within a month after his surgery the pain had gotten "much worse" (Tr. 408).  Records from Dr. Henry's office show that the pain was constant, burning, and aching, and a physical examination done on December 3, 2014 revealed various positive findings, including pain at a 7/10 level, aggravated by walking and driving, and a note that the pain had not been alleviated with conservative treatment.  See Tr. 426-27.  Other notes show an antalgic gait favoring the left leg and weakness in the left dorsiflexion and plantar flexion.  See Tr. 438.  The concern about his left leg was serious enough for his doctor to recommend surgical intervention.  The ALJ made no mention of any of this evidence.

In the Court's view, the omission of any significant discussion of this evidence requires a remand for further

proceedings.  "[W]hile it is true that the ALJ must consider all of the evidence, reversible error does not occur unless it appears from the record that the ALJ simply failed to take into account at all some item of evidence which materially bears on the ultimate resolution of the case."  McKay v. Comm'r of Social Security, 2015 WL 6447739, *6 (S.D. Ohio Oct. 26, 2015), adopted and affirmed Case No. 14-1061 (S.D. Ohio Nov. 17, 2015).  That is what occurred here.  Consequently, the case should be remanded for a more complete consideration of whether the evidence about Plaintiff's left leg problems - evidence which is clearly material to his ability to stand or walk for prolonged periods of time in a work setting - would preclude him from performing the demands of light work or otherwise restrict him beyond the residual functional capacity found by the ALJ.

### 2. Outdated State Agency Opinions

The second part of this claim relates to the ALJ's decision to follow, and give great weight to, the opinions of the state agency reviewers which were rendered in March and May of 2013.  Little additional discussion on this point is needed.  Neither of the reviewers had any records relating to the left leg condition since that problem did not develop until July of 2014.  They clearly could not have considered whether that condition was inconsistent with the residual functional capacity to do the standing and walking required by light work.  The Court's discussion of the evidence on that issue shows that the ALJ did not correctly determine that there was no evidence in the record post-dating the state agency review which might have impacted their opinions.  This claim also supports a remand.

### B. Sentence Six Remand

This Court has previously considered the appropriate course of action to take when a remand is ordered under sentence four of 42 U.S.C. §405(g) but the Plaintiff has also asked for a sentence six remand based upon new evidence.  In Fowler v. Comm'r of

<u>Social Security</u>, 2015 WL 5579841, *5 (S.D. Ohio Sept. 21, 2015), the Court said:

> When the Court decides to remand a case under 42 U.S.C. § 405(g), sentence four, that determination ordinarily moots a request for a sentence six remand. As the Court explained in <u>Bunn v. Comm'r of Social Security</u>, 2014 WL 644718, *9 (M.D. Fla. Feb. 19, 2014), once a sentence four remand is granted, "[t]he Commissioner should consider all of the relevant evidence on remand under sentence four." This Court has adopted that approach in other cases. <u>See, e.g., Yeager v. Comm'r of Social Security</u>, 2010 WL 99062 (S.D. Ohio Jan. 5, 2010)(finding a sentence six remand request moot when a sentence four remand is granted). So have other courts. <u>See, e.g., Falcone v. Comm'r of Social Security</u>, 2009 WL 3241879 (N.D. W.Va. Sept. 30, 2009). The Court will adopt that course of action here.

The Court sees no reason to treat this case differently, especially because the new evidence which Plaintiff cites in support of his request for a sentence six remand deals with the continued treatment of his left leg symptoms.  Since the ALJ will be reviewing the record concerning that impairment, he should additionally consider both the records which Plaintiff submitted to the Appeals Council and any other pertinent records in making his decision about whether Plaintiff still retains the residual functional capacity to perform the exertional demands of light work activity.

## VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.  It is further recommended that Plaintiff's alternative request for a sentence six remand be found to be moot.

## VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                               /s/ Terence P. Kemp  
                                             United States Magistrate Judge